UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERCY DONELLE CUMMINGS,

        Petitioner,

v.                                    CASE NO. 07-12158

                                       HONORABLE STEPHEN J. MURPHY, III

BLAINE LAFLER,

        Respondent.

_____/

**OPINION AND ORDER DENYING HABEAS CORPUS PETITION,
GRANTING A CERTIFICATE OF APPEALABILITY, AND
<u>GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL</u>**

Pending before the Court is Percy Donelle Cummings' *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Cummings' state court convictions for murder and certain related offenses. Cummings alleges that (1) his statement to the police was involuntary, (2) the trial court should have granted his attorney's request for an evaluation on competency to stand trial, and (3) his trial attorney was ineffective. The State urges the Court through counsel to deny the habeas petition. Having reviewed the pleadings and record, the Court concludes that Cummings' claims lack merit. Accordingly, the habeas petition will be denied.

**BACKGROUND**

Petitioner was charged in Saginaw County, Michigan with first-degree (felony) murder, first-degree home invasion, unarmed robbery, and carjacking. The charges arose from the murder of Nadine Lightsey in Flint, Michigan on or about June 14, 2003. The

testimony at trial has been summarized by the state court as follows:

> The victim's sister discovered the victim dead in her home. According to the sister, she initially believed that the victim's home had been robbed or that there had been a fight. However, she soon discovered the victim's dead body, wrapped in a blanket, on her bed. Blood was spattered on every wall of the room.
>
> There was . . . blood and DNA evidence which placed defendant at the crime. A small bloodstain found on defendant's right shoe was tested for DNA evidence and the test concluded that the victim's blood was present on the shoe. Other physical evidence linking defendant to the crime included shoe impressions found outside the victim's house and inside the home on the kitchen floor that matched the running shoes that defendant was wearing. In addition, a chess set that was stolen from the victim's home was recovered from defendant's house. The police were unable to match any fingerprint evidence at the scene of the crime to defendant however, and they were unable to secure any DNA evidence from the victim's finger[nails] that matched defendant. In addition to the aforementioned evidence, defendant made a videotaped statement to the police in which he admitted to fighting with the victim, tying her up, robbing her, and stealing her car. However, defendant consistently denied that he killed the victim.

*People v. Cummings*, No. 262294 (Mich. Ct. App. Nov. 30, 2006).

Cummings did not testify or present any witnesses. His defense was that the prosecution did not prove its case and that he acted in defense of another person when he entered the victim's house.

The jury was instructed on the following lesser-included offenses: second-degree murder as a lesser-included offense of first-degree murder; larceny in a building as a lesser-included offense of first-degree home invasion; and unlawfully driving away an automobile as a lesser-included offense of carjacking. On March 11, 2005, the jury found Cummings guilty, as charged, of felony murder, Mich. Comp. Laws § 750.316b, first-degree home invasion, Mich. Comp. Laws § 750.110a(2), unarmed robbery, Mich. Comp. Laws § 750.530, and carjacking, Mich. Comp. Laws § 750.529a. The trial court sentenced

Cummings to life imprisonment for the murder, fourteen to forty years in prison for the home invasion, fourteen to thirty years in prison for the unarmed robbery, and forty-six to seventy years for the carjacking. The Michigan Court of Appeals affirmed Cummings' convictions in an unpublished, *per curium* opinion, and on April 24, 2007, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Cummings*, 477 Mich. 1112 (2007).

Cummings filed his habeas corpus petition on May 18, 2007. His grounds for relief read as follows:

> I. The police conducted an improper interview of Defendant-Appellant.
>
>   a. The police continued to interview Defendant-Appellant after he requested an attorney.
>
>   b. Defendant-Appellant's statements were not voluntary due to his mental state.
>
> II. The trial court abused its discretion by denying Defendant-Appellant's motion to be referred to the forensic center for a determination of competency.
>
> III. The failure of Defendant's trial attorney to vigorously attack the chain of custody of the forensic evidence, combined with the failure to obtain and utilize a private investigator and expert witness, was a "deficient performance" which deprived Defendant of his Sixth and Fourteenth Amendment rights to the effective assistance of counsel.

Respondent Blaine Lafler asserts in an answer to the habeas petition that Cummings' claims lack merit. More specifically, Respondent contends that the state

court's adjudication of Cummings' first claim was objectively reasonable, the second habeas claim is not cognizable on habeas review, and Cummings waived review of his third claim by failing to offer any rationale for his arguments in the Michigan Court of Appeals.

## STANDARD OF REVIEW

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect*

application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). Furthermore, section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted).

## DISCUSSION

I. CUMMINGS' STATEMENT TO THE POLICE

  A. Whether the Waiver of Constitutional Rights was Voluntary

The police interrogated Cummings several hours after his arrest. The interview stopped when Cummings requested an attorney. He subsequently waived his constitutional rights and agreed to talk to the police. During this second interview, Cummings stated that he broke into Ms. Lightsey's house when he heard Ms. Lightsey fighting with his girlfriend. He admitted to the police that he pushed Ms. Lightsey onto her bed, tied her up, and stole some of her personal belongings. He claimed that Ms. Lightsey was alive when he left her home, and he denied killing her. He said that he discovered her dead body a few hours later when he went back to the house.

5

Cummings asserts in his habeas petition that his waiver of the right to have an attorney present during the second interview with the police was involuntary because the police continued to talk to him after he invoked his right to counsel.

### 1. Legal Framework

Prior to any questioning, the police must warn a suspect that

> he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning.

*Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). A valid waiver of the right to have counsel present during custodial interrogation

> cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation even if he has been advised of his rights. [A]n accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police*.

*Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) (footnote omitted) (emphasis added).

"The *Edwards* rule is 'designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights.'" *Montejo v. Louisiana*, __U.S. __, __, 129 S. Ct. 2079, 2085 (2009) (quoting *Michigan v. Harvey*, 494 U.S. 344, 350 (1990)).

A state court's determination of whether a suspect's waiver of *Miranda* rights was knowing and intelligent is reviewed under the standards set forth in 28 U.S.C. § 2254(d),

6

and a state court's subsidiary factual findings are entitled to a presumption of correctness under 28 U.S.C. § 2254(e). *Thompkins v. Berghuis*, 547 F.3d 572, 583 (6th Cir. 2008), *petition for cert. filed*, 77 U.S.L.W. 3670 (U.S. May 26, 2009) (No. 08-1470). In addition, section "2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

### 2. The Facts

Sergeant Terrence Coon testified at the *Walker* hearing[1] in this case that he and Sergeant Mitch Brown interviewed Cummings about a week after Nadine Lightsey's murder. The interview was videotaped, but it was not lengthy, because Cummings requested an attorney and was then taken to the booking area. About twenty-four minutes later, Cummings informed someone that he wished to speak with the officers once again. Sergeants Coon and Brown then returned to the interview room and commenced a second interview. Officer Coon re-read Cummings' constitutional rights to him. Cummings waived his rights, including the right to have an attorney present.

Sergeant Coon denied talking about the case with Cummings after Cummings invoked his right to an attorney. Coon testified that he and Sergeant Brown merely responded to Cummings' questions about his girlfriend, who had been arrested and released. According to Sergeant Coon, any voices audible on the tape of the interview could have come from people in the hallway or from somebody in the holding area. (Mot.

---

[1] In Michigan, a hearing to determine the voluntariness of a defendant's statement to the police is called a *Walker* hearing. *See People v. Walker (on rehearing)*, 374 Mich. 331 (1965).

Hr'g Feb. 25, 2005, at 9-24, 33-35.) No pictures of the victim or crime scene were shown to Cummings, as none had been developed by the time of the interview. (Mot. Hr'g Mar. 1, 2005, at 33.)

Cummings testified at the *Walker* hearing that the police "badgered" and "nagged" him after he invoked his right to an attorney. Cummings also testified that the police showed him a picture of the deceased victim and asked him why he did not want to cooperate and whether he was sure he wanted an attorney. He claimed that there was no one in the hallway besides the two officers and him and that it was their three voices which were audible on the tape of the interview. (Mot. Hr'g Feb. 25, 2005, at 45-48; Mot. Hr'g Mar. 1, 2005, at 4-5, 9-16.)

Cummings asserts in his habeas petition that he relented and waived his right to an attorney because Sergeants Coon and Brown harassed him after he invoked his right to any attorney. At the hearing, however, Cummings admitted on cross-examination that he had reassured Sergeant Coon he wished to talk to him a second time. Cummings also admitted that he had said no threats or promises were made to induce him to talk to the officers. In addition, he conceded that, after talking to Sergeant Coon for three or four hours during the second interview, he signed a piece of paper stating that no promises or threats had been made. (Mot. Hr'g Mar. 1, 2005, at 21-24.)

### 3. The State Court Rulings

The trial court stated at the conclusion of the *Walker* hearing that it was clear from the tape of the interviews that the officers scrupulously honored Cummings' right to have an attorney present by terminating the first interview. The trial court also stated that it was

8

clear from the tape that Cummings changed his mind, contacted Sergeant Coon, and consented to the second interview. The court found Sergeant Coon's version of the facts more credible than Cummings' version and concluded that Cummings made a voluntary statement.

The Michigan Court of Appeals found no error in the trial court's determination that Cummings' waiver was voluntary. The court of appeals stated that "[t]he two pieces of undeniable tangible evidence, the videotape of [Cummings'] statements to the police and the signed waiver, both suggest that [Cummings] was fully apprised of all his rights and, contrary to [Cummings'] claims, that the police did not engage in misconduct to secure the waiver of rights." *Cummings*, Mich. Ct. App. No. 262294, at 4.

### 4. Analysis and Conclusion

This Court must defer to the trial court's finding that Sergeant Coon was more credible than Cummings. *Lonberger*, 459 U.S. at 434. The state court's legal conclusion that Cummings' waiver of rights was voluntary also is entitled to deference, because the record supports the conclusion that Cummings initiated the second interview with the police and then waived his right to have an attorney present. Although he claims that the police badgered him, he implicitly admitted at the *Walker* hearing that he contacted Sergeant Coon after the first interview and expressed a willingness to talk to Coon. He also admitted that he had said at the time that no threats or promises were made to him.

The state court's conclusion – that Cummings waived his right to the presence of an attorney during custodial interrogation and that his waiver was voluntary – was objectively reasonable. Therefore, Cummings has no right to habeas relief.

B. <u>Whether Cummings' Statement was Voluntary, Given his Mental State</u>

Cummings alleges that the circumstances surrounding his statement to the police rendered the statement involuntary. He asserts that he was detained without food and water, had not slept for a couple of days, and had consumed cocaine, alcohol, and marijuana before his arrest.

1. <u>Legal Framework</u>

Although "[n]o single litmus-paper test for constitutionally impermissible interrogation has been evolved," *Culombe v. Connecticut*, 367 U.S. 568, 601 (1961), "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Factors that may be considered when determining whether an interrogation was constitutionally impermissible are: extensive cross-questioning by the police, undue delay in the arraignment, refusal to permit communication with friends and legal counsel, the duration and conditions of detention, the attitude of the police toward the suspect, the suspect's physical and mental state, and pressures which sap or sustain the suspect's powers of resistance and self-control. *Culombe*, 367 U.S. at 601-02; *see also Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) ("The determination of whether there has been an intelligent waiver of [the] right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."). The ultimate test of voluntariness is whether the confession was

> the product of an essentially free and unconstrained choice by its maker[.]

> If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

*Culombe*, 367 U.S. at 602.

### 2. Analysis

Cummings was arrested about 10:00 p.m. on June 21, 2003, and kept in a holding cell until 5:30 a.m. the following morning. He testified at the *Walker* hearing that he was not given any food or water during that time and that he had not slept the previous night. Sergeant Coon, however, testified that Cummings was "pretty much awake" during the second interview. (Mot. Hr'g Feb, 25, 2005, at 32.)

Although Cummings also claimed that he had used crack cocaine, alcohol, and marijuana before his arrest, he admitted on cross-examination by the prosecutor that he may have told Sergeant Coon he did not smoke any marijuana in the past twenty-four hours and that he was not drunk. He testified that he had been weary, but that he knew what was going on at the time. (Mot. Hr'g Mar. 1, 2005, at 18-21.)

The Michigan Court of Appeals noted on review of Cummings' claims that he had great recall of the events surrounding his statements. The court of appeals concluded from Cummings' recall of events and from his conduct at the time of his statements that he was not intoxicated and could knowingly and intelligently waive his rights.

The record supports this conclusion. Although Cummings alleges that he had not slept for days, he had an opportunity to rest between the time of his arrest at approximately 10:00 p.m. and his interrogation seven and a half hours later. Furthermore, there is no

indication in the record that the police mistreated him or used coercive tactics to induce a statement. By his own admission, he knew what was happening. He also took the initiative to contact the officers after his first interview and ask to speak with them. This is some indication of rational thinking and the fact that his state of mind was not so clouded by lack of sleep or consumption of drugs and alcohol as to be incapable of knowingly and intelligently waiving his rights.

The state appellate court's determination that Cummings' statement was voluntary was not contrary to, or an unreasonable application of, Supreme Court precedent. Therefore, Cummings has no right to habeas corpus relief on the basis that his statement to the police was involuntary due to his state of mind.

III.  DENIAL OF MOTION FOR COMPETENCY EVALUATION

Cummings alleges that the trial court abused its discretion by denying his attorney's motion to have him evaluated for competency to stand trial. Cummings claims that it was evident from his conduct and from the questions and answers which he addressed to the trial court that he was incapable of understanding the nature of the proceedings against him and could not assist his attorney with a defense. The Michigan Court of Appeals was unpersuaded by this argument and ruled that the trial court did not abuse its discretion by denying the motion for a competency evaluation.

A. Legal Framework

"[T]he Constitution does not permit trial of an individual who lacks 'mental competency.'" *Indiana v. Edwards*, __ U.S. __, __, 128 S. Ct. 2379, 2383 (2008). The standard for competency is "(1) 'whether' the defendant has 'a rational as well as factual

understanding of the proceedings against him' and (2) whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *Id.* (quoting *Dusky v. United States,* 362 U.S. 402, 402 (1960) (*per curiam*)). "*Drope* [*v. Missouri,* 420 U.S. 162 (1975)], repeats that standard, stating that it 'has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.'" *Id.* "[A] court's failure to make a proper competency inquiry where there is substantial evidence of a defendant's incompetency violates due process by depriving the defendant of his right to a fair trial." *Mackey v. Dutton*, 217 F.3d 399, 411 (6th Cir. 2000) (citing *Pate v. Robinson,* 383 U.S. 375, 385-86 (1966)).

> [E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Drope*, 420 U.S. at 180.

  B. <u>The State Court Hearing on Cummings' Motion</u>

  Cummings alleges that he was paranoid and unable to trust his attorney due to bad experiences with two previous attorneys. He also claims that (1) he did not understanding the trial process or the felony murder charge and (2) he had the unrealistic expectation that enlisting a private investigator would prove that Sergeant Coon corrupted the evidence.

Distrust of one's attorney and unrealistic expectations do not necessarily indicate lack of competence to stand trial. Furthermore, Cummings testified at the hearing on his attorney's motion for a competency evaluation that he had become upset during the *Walker* hearing on the previous day because he was frustrated with the process. (Mot. Hr'g Mar. 2, 2005, at 14).

During a discussion on the charges, Cummings expressed some confusion. He asked the trial court what "pursuit to murder" was and whether that was a count. The trial court then explained that felony murder was a murder committed during the commission or attempt to commit a felony. Cummings replied, "[I]s it saying a murder happened during, or is it saying I actually – I'm actually a suspect or not?" (*Id.* at 18-19.) Cummings admitted, however, that he sometimes had trouble expressing himself, and he ultimately stated that he thought he understood the felony murder charge. (*Id.* at 11-12 and 20). As for the other charges, he defined home invasion as entering without permission, unarmed robbery as taking without a weapon, and carjacking as "strong arming a person." (*Id.* at 20.)

The prosecutor pointed out that, when she asked Cummings at the *Walker* hearing on the previous day whether he had seen the victim in bed covered with blood, Cummings had invoked his right to remain silent under the Fifth Amendment. The prosecutor concluded from Cummings' invocation of the Fifth Amendment and from Cummings' letters to the court administrator that he knew what was going on and knew how to protect his rights. (*Id.* at 20-22.)

## C. The State Court's Decision

The trial court denied defense counsel's motion for a forensic evaluation because Cummings said he did not want one, did not think one was necessary, and did not have a history of psychiatric care. The court was satisfied that Cummings understood the nature of the proceedings against him and had the ability to assist his attorney in a rational manner. The court opined that Cummings' frustration with the proceedings did not rise to the level of incompetence. (*Id.* at 24-26.)

The trial court's competency determination is entitled to complete deference because it is fairly supported by the record. *Mackey*, 217 F.3d at 414. As pointed out by the Michigan Court of Appeals, Cummings

> expressed a high level of understanding and a high level of competency in this case. He wrote many of his own motions. He also maintained a steady correspondence with the Court Administrator, trying to ensure that he was given a fair trial. He was concerned about the forensic evidence and articulated his belief that his attorneys were not advocating for him to the best of their abilities. Defendant on occasion made these concerns known to the judge in open court, despite his attorney's efforts to restrain him.

*Cummings*, Mich. Ct. App. No. 262294, at 5.

The court of appeals concluded that the trial court did not abuse its discretion when it denied the motion for a competency evaluation. This conclusion was objectively reasonable. An evaluation of competency was unnecessary and the lack of one did not violate Cummings' right to due process.

## III. ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

Cummings' third and final claim alleges that his trial attorney's performance was

deficient and that the deficient performance deprived him of his constitutional right to effective assistance of counsel. Specifically, Cummings asserts that his attorney failed to vigorously attack the chain of custody and failed to use a private investigator or an expert witness. According to Cummings, the failure to produce an expert witness to rebut the testimony of the State's expert witness amounted to a concession of guilt. Cummings also claims that he was prejudiced by defense counsel 's short amount of time to prepare for trial.

The Michigan Court of Appeals stated on review of this claim that Cummings' had failed to offer an explanation or rationale for any of his claims. The court of appeals nevertheless reviewed the allegations and found that they were either unsupported by the record or failed to demonstrate that Cummings would have been acquitted if his attorney had not committed the errors.

### A. *Strickland v. Washington*

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law'" for purposes of evaluating ineffective-assistance-of-counsel claims. *Williams*, 529 U.S. at 391. Pursuant to *Strickland*, Cummings must demonstrate that his attorney's performance was deficient and that the deficient performances prejudiced the defense. *Strickland*, 466 U.S. at 687. This requires showing "that counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and "that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Supreme Court has "indulged in the

presumption that counsel's conduct was the result of strategic decisions made in accordance with the client's best interests." *Bonin v. California*, 494 U.S. 1039, 1045 (1990) (citing *Strickland*, 466 U.S. at 689).

    B.  <u>Application</u>

Petitioner states that his attorney did not have enough time to prepare for trial. The attorney, however, said he was ready for trial (Mot. Hr'g Mar. 2, 2005, at 6), and "[l]ength of time to prepare will not in and of itself justify a conclusion of ineffective assistance of counsel." *United States ex rel. Jablonsky v. Follette*, 291 F. Supp. 828, 830 (D.C. N.Y. 1968) (citing *United States v. Trigg*, 392 F.2d 860, 862 (7th Cir. 1968), and *United States v. Tribote*, 297 F.2d 598, 601 (2d Cir. 1961)).

Furthermore, contrary to Cummings' allegations, defense counsel did consult an investigator and two expert witnesses to assist him with the defense. Counsel retained an investigator, a DNA expert, and a blood splatter expert. Although he did not call them as witnesses, it is obvious from the record that the decision not to produce the experts as witnesses was a strategic decision. Counsel stated on the first day of trial that he made a decision not to have the expert witnesses prepare a report, because he would have had to give a copy of the report to the prosecutor. His decision not to request a report from the potential witnesses was "a judgment call" that he made "in [his] client's best interest." (Mot. Hr'g Mar. 2, 2005, at 23.) The Court infers from these comments that any reports would not have been favorable to the defense and, therefore, it was in Cummings' best interest not to have the defense experts produce reports that the prosecution could have used to its advantage.

As for an investigator, defense counsel stated that Cummings expected every person he had contact with at significant points to be tracked down, interviewed, and called as a witness in his defense. (*Id.* at 7-8.) Defense counsel stated that he had been in contact with an investigator and had used the investigator for specific issues that arose or for tracking down witnesses. However, he did not want to send the investigator "on a fishing expedition," and he thought that the level of investigation expected by Cummings was unreasonable, if not frivolous. (*Id.* at 8.) The Court concludes that defense counsel's limited use of an investigator and expert witnesses was a strategic decision, which is entitled to deference.

Cummings' allegation about the chain of custody also lacks merit. There is no indication in the record that there was a break in the chain of custody for critical evidence or that anyone tampered with the evidence. Defense counsel handled the issue adequately by questioning witnesses about the chain of custody.

Cummings has not shown that defense counsel's performance was deficient. Accordingly, the state court's conclusion that Cummings was not deprived of his constitutional right to effective assistance of counsel is objectively reasonable.

## CONCLUSION

The state appellate court's rejection of Cummings' claims did not result in a decision that was contrary to, an unreasonable application of, Supreme Court precedent. Accordingly, the petition for writ of habeas corpus (Dkt. #1) is **DENIED**. The Court nevertheless **GRANTS** a certificate of appealability because reasonable jurists could disagree with the Court's resolution of Petitioner's constitutional claims. *Banks v. Dretke*,

540 U.S. 668, 705 (2004).  And because an appeal could be taken in good faith, Cummings may appeal this decision *in forma pauperis*.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(4)(B).

                                                      s/Stephen J. Murphy, III
                                                      STEPHEN J. MURPHY, III
                                                      United States District Judge

Dated:  October 27, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 27, 2009, by electronic and/or ordinary mail.

                                                       s/Alissa Greer
                                                     Case Manager